# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                          )
MANNAI HOME, LLC,                         )
                                          )
    **Plaintiff,**                         )
                                          )          **Civil Action No.**
    **v.**                                )          **17-11915-FDS**
                                          )
                                          )
**CITY OF FALL RIVER and**                )
**JOSEPH BISZKO,**                        )
                                          )
    **Defendants.**                        )
_____ )

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S MOTION TO STRIKE

**SAYLOR, J.**

This is a disability-discrimination case arising out of a failed attempt to open a sober recovery home in Fall River, Massachusetts. Plaintiff Mannai Home, LLC, sought to purchase and convert a three-unit building to create such a home. The complaint alleges that defendants the City of Fall River and Joseph Biszko, the city's building inspector/commissioner, prevented Mannai Home from doing so, thereby unlawfully discriminating against the disabled in violation of federal and state laws.

The complaint asserts claims under the Massachusetts Zoning Act, Mass. Gen. Laws ch. 40A, § 3 (Count 1); the Fair Housing Act, 42 U.S.C. § 3604 (Count 2); and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (Count 3). In essence, Mannai Homes contends that the City refused to grant it permission to open a sober recovery home. It is undisputed that Mannai Home never actually applied for a building permit or a special permit under the zoning

laws, and the City never formally refused permission.

The parties have filed cross-motions for summary judgment. Mannai Home has also filed a motion to strike portions of defendants' statement of facts. For the following reasons, plaintiff's motion to strike will be denied, plaintiff's motion for summary judgment will be denied, and defendants' motion for summary judgment will be denied in part and granted in part.

## I.   Background

Except where otherwise noted, the following facts are set forth in the record and are undisputed.

### A.   Factual Background

Mannai Home, LLC, is a limited liability company with an office in Quincy, Massachusetts. (Burke Aff. ¶ 2). Ryan Burke is the manager of Mannai Home. (*Id.*).

In 2017, Mannai Home intended to purchase and renovate a three-unit property located at 91-93 Barnaby Street in the City of Fall River ("the property") for the purpose of establishing a sober recovery home. (Burke Aff. ¶ 4; Burke Dep. at 23; Howayeck Aff. Ex. 6 at No. 4). Mannai Home intended to accommodate 20 to 22 individuals at the property. (Burke Dep. at 23).

The City of Fall River is a Massachusetts municipality. (Tine Aff. Ex. E at ¶ 2). The City is currently home to multiple group residences, including sober homes and residences for the disabled. (Hathaway Aff. ¶ 18).[1] In 2017, Joseph Biszko was the City's Building Inspector/Commissioner. (Biszko Dep. at 8-9; Tine Aff. Ex. E at ¶ 3).

On July 11, 2017, Mannai Home's legal counsel, Andrew Tine, sent a letter to Biszko

---

[1] Because Mannai Home has moved to strike the affidavit of Glenn Hathaway, this statement is not undisputed. However, Mannai Home does not appear to dispute the substance of its contents.

with the following subject line:

> Re:    91-93 Barnaby Street, Fall River, MA
>        RELIEF UNDER M.G.L. c. 40A, SECTION 3 and REQUEST FOR
>        REASONABLE ACCOMMODATION UNDER THE FAIR HOUSING ACT

(Burke Aff. ¶ 5; Howayeck Aff. Ex. 3).[2] Tine's letter, and the attached memorandum, stated that

Mannai Home's intention was to renovate the property and establish a sober recovery home.

Although styled as a request for reasonable accommodation, it effectively requested that the City

allow the intended use as a matter of right. (Burke Dep. at 23; Howayeck Aff. Ex. 3; Burke Aff.

¶¶ 4-5).

The letter stated in part:

> As stated in the memorandum the purpose of providing this notice and
> information is to ensure that the City of Fall River is aware of the intended
> occupancy by disabled individuals entitled to protection under State and Federal
> law and to ensure equal treatment and access to housing. In the event your
> Department would find the intended use in violation of any local or state building,
> sanitary or zoning laws, I would like to address your concerns upfront to avoid
> any impact to Mannai Home, LLC's use and the intended occupants['] enjoyment
> of the Property.
>
> To be clear, it is my understanding that State and Federal law do not allow a
> municipality to impose any special requirements to exclude disabled individuals
> from housing opportunities, thus no special permit or variance is required with
> respect to the intended use and occupancy of the Property, however, should your
> Department disagree, I would like to address your concerns promptly.

(Howayeck Aff. Ex. 3).

The attached memorandum provided further explanation of the legal basis for Mannai

Home's position:

> The purpose of this memorandum is to open a dialogue concerning the
> applicability of Mass Gen. L. c. 40A, Section 3 with respect to what is commonly
> referred to as "sober housing," so that interested parties may amicably work under
> the intent of the statute to facilitate equal access to housing for persons in

---

[2] At that point, Mannai Home had not yet purchased the property.

recovery from substance abuse.  M.G.L. c. 40A, Section 3, as interpreted by case law, provides that persons in recovery from substance abuse may be qualified as disabled.  It further provides that groups of disabled individuals may live together in the same numbers allowable at a property if occupied by a single family (or groups of similar size).  In short, unrelated disabled individuals living together are to be treated the same as related individuals living as a family.  The intent of the law is to remove any barriers for housing opportunities for disabled individuals that may be created by ordinances, zoning laws or decisions of municipalities.  For example, limits on the number of unrelated people that may live together.

(*Id.*).

Biszko received the letter, but did not formally respond.  Instead, he referred it to the City's corporation counsel, Joseph Macy, for an opinion.  (Biszko Dep. at 14, 16-17; Tine Aff. Ex. C at ¶ 1; Ex. E at ¶ 7).  Tine called and e-mailed Macy to discuss the letter, but did not receive a response.  (Tine Aff. Ex. E at ¶ 9).

On July 13, 2017, Biszko received a response from Macy.  (Biszko Dep. at 17; Howayeck Aff. Ex. 5).  Macy wrote that his office does not render opinions to private individuals or organizations, but referred Biszko to a prior opinion letter on the subject of group residences, and stated that "the issue is properly before the Zoning Board of Appeals." (Howayeck Aff. Ex. 5).

That same day, Mannai Home entered into the purchase-and-sale agreement for the property.  (Burke Aff. Ex. A).  The agreement included the following "No Penalty Provision":

Sale is contingent upon there being no adverse action, refusal or opinion from the City of Fall River stating that the property may not be used for congregate housing for disabled individuals as present zoned and permitted ("Adverse Notice").  The buyer intends on notifying the City of Fall River on his intended use of the property after the offer to purchase has been signed by all parties. Buyer may withdraw from this purchase without penalty if Adverse Notice is received prior to closing . . . .

(Burke Aff. Ex. A at ¶ 23).

On July 25, 2017, Tine called Biszko and spoke with him about the property.  (Biszko

4

Dep. at 12-14; Howayeck Aff. Ex. 6 at No. 5). Biszko testified that he told Tine during that call

that a sober house could not be operated on the property because it would be considered a group

residence. (Biszko Dep. at 12-14). He further testified that he believes he would have told Tine

to file an appeal with the ZBA at that point, but does not recall whether he did, in fact, do so.

(Biszko Dep. at 13-14).

After the call, Tine e-mailed Macy. (Howayeck Aff. Ex. 7; Tine Aff. ¶ 2 & Ex. A). The

e-mail stated:

> I spoke with Director Biszko of ISD who indicated my letter had been referred to
> City counsel. Attached is a copy of my letter with the referenced memorandum. I
> wanted to reach out to see if the City had any policy or protocol in place with
> respect to sober housing for disabled individuals, as my client intends on
> purchasing the referenced property which is in disrepair and making a significant
> investment to bring it up to code and habitability standards to provide the subject
> housing. I can be reached at [###-###-####]. I look forward to speaking with
> you.

(Biszko Dep. at 17-18; Howayeck Aff. Ex. 7; Tine Aff. ¶ 2 & Ex. A).

On July 31, 2017, Burke went in person to inquire about the zoning for the property and

spoke with Biszko. (Burke Aff. ¶ 6). According to Burke, Biszko told him during that meeting

that the City already had problems with sober homes, and that the project was "never going to

happen." (*Id.*).

Later that day, Burke e-mailed Biszko. (Tine Aff. Ex. E at ¶ 11; Burke Aff. ¶ 7). Burke

wrote that he had signed a purchase-and-sale agreement for the property and asked Biszko to

confirm that the sober home would not be allowed, so that Burke could share that information

with the seller. (*Id.*). Biszko received Burke's e-mail, but never responded. (Tine Aff. Ex. E at

¶ 12). Biszko says he does not recall any conversations with Burke, or ever meeting him prior to

this litigation; however, he was also unable to state definitely that such a meeting did not occur.

(Biszko Dep. at 10-12).

On August 2, 2017, Mannai Home invoked the "No Penalty Provision" to opt out of the purchase-and-sale agreement. (Burke Dep. at 32).

Mannai Home never applied for a building permit for the sober home, sought a special permit for a group residence, or filed an appeal with the ZBA. (Hathaway Aff. ¶¶ 8-9; Burke Dep. at 41-42, 46).[3]

### B.   Procedural Background

On October 5, 2017, Mannai Home filed the present action against the City and Biszko. The complaint asserts claims of disability discrimination under the Zoning Act, Mass. Gen. Laws ch. 40A, § 3 (Count 1); discrimination under the Fair Housing Act, 42 U.S.C. § 3604 (Count 2); and discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (Count 3) for intentional discrimination and failure to grant reasonable accommodation.

The parties have filed cross-motions for summary judgment. Mannai Home has moved for summary judgment as to Counts 1 and 2. Defendants have moved for summary judgment on all counts. Mannai Home has also moved to strike portions of defendants' statement of material facts, to the extent it relies on the affidavit of Glenn Hathaway.

## II.   Standard of Review

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is

---

[3] Because Mannai Home has moved to strike the affidavit of Glenn Hathaway, this statement is not undisputed. However, Mannai Home does not appear to dispute the substance of its contents—specifically, that it never filed an application for a building permit, sought a special permit, or appealed to the ZBA. Rather, Mannai Home concedes it did not do so, but adds that it was not required to, nor was it given "any indication that there was a 'zoning issue'" with the project. (*See, e.g.*, Pl.'s Response to Ds' SMF ¶¶ 21, 29-31).

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

## III. <u>Analysis</u>

### A. <u>Motion to Strike</u>

Because the disposition of the motion to strike may affect the evidentiary record, it will be addressed first.

#### 1. <u>Background</u>

On January 12, 2018, defendants served their Rule 26(a)(1) initial disclosures on plaintiff. (Pl. Mot. to Strike Ex. 2). Those disclosures identified seven relevant documents in defendants' possession, including various e-mails and letters, but did not identify any potential witnesses or persons with discoverable information. (*Id.*). Although several individuals, including Joseph Biszko, Joseph Macy, William Kenny, and Ryan Burke, were identified as authors or recipients of the disclosed correspondence, Glenn Hathaway was not among them.

(*Id.*).

During the course of discovery, plaintiff served interrogatories on defendants. (*Id*. Ex. 1). Interrogatory No. 1 requested that defendants "[i]dentify all persons having knowledge or information concerning [plaintiff's] claims." (*Id.*). Interrogatory No. 5 requested that defendants "[s]et forth in full all conversations [that they] had with anyone working for or associated with the City of Fall River concerning [plaintiff's] request to redevelop [the property] for purposes of sober housing." (*Id.*). Interrogatory No. 8 requested that defendants "[i]dentify all experts [that they] intend to call at the time of trial and set forth in full their anticipated testimony." (*Id.*).

On February 27, 2018, defendants served their answers to the interrogatories. (*Id.*). In response to Interrogatory No. 1, defendants stated that Biszko was "the only person having knowledge or information concerning [plaintiff's] claims." (*Id.*). In response to Interrogatory No. 5, defendants identified "Glenn Hathaway, Local Building Inspector" as someone with whom they had conversations concerning plaintiff's request to develop the property for purposes of sober housing. (*Id.*). In response to Interrogatory No. 8, defendants stated that the experts they intended to call at trial were "[u]nknown at this time" and that they would supplement their answer "if an expert [was] retained for testimony." (*Id.*). Other than in response to Interrogatory No. 5, defendants did not disclose the existence of Hathaway in their interrogatory answers.

On April 26, 2018, counsel for plaintiff deposed Biszko. (Ds' Opp. to Pl.'s Mot. to Strike Ex. 2). At his deposition, Biszko identified Hathaway as someone with whom he met in connection to plaintiff's opening of a sober house. (*Id.* at 25-27). He testified that he had two or three in-person meetings with Hathaway about the property and the proposal to redevelop it as a sober house. (*Id.*).

On July 31, 2018, fact discovery closed.

On September 21, 2018, defendants filed an opposition to plaintiff's motion for partial summary judgment and filed their own motion for summary judgment. In support of that motion, defendant filed a statement of material facts. Defendants attached a four-page affidavit from Hathaway as an exhibit to that statement and cited it approximately fifteen times. (Ds' SMF Ex. 1).

In his affidavit, Hathaway identified himself as the City's Director of Inspectional Services/Building Commissioner. (*Id.* at ¶ 1). He stated that he was familiar with the property in question, as well as with the City's zoning laws, building-code requirements, and change-in-occupancy permit process. (*Id.* at ¶¶ 2-3, 10-19). He described the steps plaintiff would have had to take in order to complete the permit process and properly establish a sober house in Fall River. (*Id.* at ¶¶ 4-7). He further stated that plaintiff did not, in fact, take those required steps. (*Id.* at ¶¶ 8-9).

Defendants' motion for summary judgment cites the Hathaway affidavit, on at least four occasions, to substantiate factual assertions about the City's zoning laws, building-code requirements, and plaintiff's failure to seek a special permit. (Ds.' Memo. in Supp. at 2 n.6, 3 nn.12-13, 6 n.24). Their opposition to plaintiff's motion for partial summary judgment also cites the affidavit in support of similar factual contentions. (*See* Ds.' Opp. at 2-4).

## 2. **Analysis**

A brief review of the relevant discovery obligations is warranted. Under Rule 26, as part of its initial disclosures, a party is required to provide to the other parties "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P.

26(a)(1)(A)(i). "A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1).

Rule 37 addresses sanctions for failure to provide discovery. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). "[T]he required sanction in the ordinary case is mandatory preclusion." *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004) (alteration in original) (internal quotation marks omitted) (quoting *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998)).

However, "preclusion is not a strictly mechanical exercise; district courts have some discretion in deciding whether or not to impose that onerous sanction." *Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este*, 456 F.3d 272, 276 (1st Cir. 2006). In determining the proper sanction, the court should consider "(1) the party's justification for the late disclosure; (2) the opposing party's ability to overcome any prejudice; (3) the impact on the court docket; (4) the party's history of litigation abuse; and (5) the party's need for the late evidence." *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Trust v. State Street Bank & Trust Co.*, 290 F.R.D. 11, 17 (D. Mass. 2013) (citing *Harriman v. Hancock Cty.*, 627 F.3d 22, 30 (1st Cir. 2010)); *see also Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188, 191, 197-98 (1st Cir. 2006).

Defendants here clearly failed to provide discovery as required by the rules. In their initial disclosures under Rule 26(a)(1), they were obligated to identify Hathaway, as well as to provide his address and telephone number, as a person likely to have discoverable information. They were also obligated to disclose Hathaway in their response to Interrogatory No. 1, as a person with knowledge or information concerning plaintiff's claims. Even if (as they contend) Hathaway was inadvertently omitted from the disclosures and interrogatory responses, they had until the close of fact discovery in April, several months later, to supplement or correct their responses in a timely manner, as required by Rule 26(e). They failed to do so.

Defendants thus failed to provide discovery as required by the rules. As noted, under Rule 37(c), they will be precluded from using Hathaway's statement in support of a motion or at trial unless the court finds that the failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

Defendants contend that their failure to disclose was harmless because (1) they identified Hathaway by name and job title in their response to Interrogatory No. 5 (as a person working for the City with whom they had conversations about plaintiff's request to redevelop the property as sober housing) and (2) Biszko identified Hathaway in his deposition (as a person with whom he had in-person meetings about the property and plaintiff's proposed redevelopment). They further contend that prior to submitting the motion to strike, plaintiff's counsel did not properly confer with defense counsel, as required by Local Rule 7.1(a)(2). Although plaintiff's counsel apparently e-mailed defense counsel prior to filing the motion, plaintiff contends that the e-mail demanded a same-day response, and therefore did not give counsel a reasonable amount of time to respond. Finally, in the event that the affidavit is struck, defendants have offered an affidavit from Biszko, who no longer works for the City, attesting to essentially the same information

about the City's municipal zoning process contained in the Hathaway affidavit, and they request leave to substitute the Biszko affidavit in its place.

Under the circumstances, the Court agrees that defendants' failure to disclose is troublesome, but ultimately harmless. The fact that Hathaway was a potential witness was made clear from the interrogatory response and Biszko's deposition testimony. Plaintiff's counsel could have easily requested contact information from defense counsel in order to depose him before the close of fact discovery in July. There is no evidence that plaintiff ever attempted to contact Hathaway, or serve a deposition subpoena, in the months that followed. There is also no evidence that plaintiff was otherwise prejudiced by defendants' failure to make a formal disclosure.[4] For those reasons, there is no reason to preclude defendants from relying on Hathaway's testimony. Plaintiff's motion to strike the Hathaway affidavit will therefore be denied.

The only remaining issue is whether plaintiff should be entitled to an award of reasonable attorney's fees and expenses in connection with the litigation of this issue. Such an award may well be appropriate, at least to some degree, and therefore the Court will give plaintiff a period of 21 days in which to seek such a sanction.

### B.    Massachusetts Zoning Act, Mass. Gen. Laws ch. 40A, § 3 (Count 1)

The Massachusetts Zoning Act authorizes individual cities and towns to pass zoning bylaws, and describes the limits of that authority and the manner in which it may be exercised. *See* Mass. Gen. Laws ch. 40A, § 1 *et seq.* The Zoning Act allows towns to regulate the maximum and minimum dimensions of structures and lots allowed in certain zoned areas. It also

---

[4] The Court is also troubled by defendants' contention that plaintiff's counsel failed to meet and confer in good faith prior to moving to strike the affidavit, as required by Local Rule 7.1(a)(2).

allows towns to regulate the uses to which land in a given area may be put.

The City of Fall River has such a zoning ordinance in effect. *See* Fall River Zoning Ordinance, § 86-1 *et seq.*[5] The zoning ordinance has a specific provision covering "group residences." The relevant provision provides that "[n]o land or structure within the City, in any district whatsoever, shall be used for a group residence, so-called, in which five or more persons unrelated by blood, marriage or adoption are housed and live together as a family, except those who are members of a religious organization, order, diocese or religious community." *Id.* § 86-253(A).

A zoning ordinance or bylaw may provide that a particular use is (1) allowed in an area, (2) allowed only by special permit, or (3) not allowed at all. Where a use is allowed in a district only by special permit, an applicant can seek such a permit from the board of appeals or the special-permit granting authority.[6] The Zoning Act provides that "[s]pecial permits may be issued only for uses which are in harmony with the general purpose and intent of the ordinance or by-law, and shall be subject to general or specific provisions set forth therein; and such

---

[5] The stated purpose of the ordinance is as follows:

[T]o promote the health, safety, convenience and general welfare of the City; to encourage the most appropriate use of land throughout the City; to prevent overcrowding of the land; to conserve the value of the land and buildings; to lessen congestion in the streets; to avoid undue concentration of population; to provide adequate light and air; to facilitate adequate provisions for transportation, water, sewage, schools, parks and other public requirements; and to preserve and increase the amenities of the City, all as set forth in Massachusetts General Laws Chapter 40A, as amended.

*Id.* § 86-2.

[6] A "permit granting authority" is defined under the Zoning Act as "the board of appeals or zoning administrator." Mass. Gen. Laws ch. 40A, § 1A. The Zoning Act further provides that certain classes of special permits may be issued by separate special-permit granting authorities. *Id.* § 9. The City's zoning ordinance names the ZBA as its special-permit granting authority. Fall River Zoning Ordinance §§ 86-462, 86-482. The ZBA has the power to "hear and decide all applications for special permits," as well as the power to "hear and decide appeals taken by any person aggrieved by reason of his inability to obtain a permit," and the power "hear and decide appeals or petitions for variances." *Id.*

permits may also impose conditions, safeguards and limitations on time or use." Mass. Gen. Laws ch. 40A, § 9.

The City's zoning ordinance requires a special permit for group residences with more than five persons (other than the two excepted categories of related persons and religious groups). The ordinance provides that the ZBA may grant a special permit after a public hearing. Fall River Zoning Ordinance § 86-253(B) ("In a specific case, the Zoning Board of Appeals, acting as the special board of appeals, may, after a public hearing, grant a special permit for the use of a structure and land for a group residence provided there is no other group residence within 350 feet of the proposed site, and that such use will not be detrimental to the public good and will not adversely affect the value or amenity of neighboring property.").

Count 1 is brought under Section 3 of the Massachusetts Zoning Act. That statute provides in relevant part as follows:

> Notwithstanding any general or special law to the contrary, local land use and health and safety laws, regulations, practices, ordinances, by-laws and decisions of a city or town shall not discriminate against a disabled person. Imposition of health and safety laws or land-use requirements on congregate living arrangements among non-related persons with disabilities that are not imposed on families and groups of similar size or other unrelated persons shall constitute discrimination. The provisions of this paragraph shall apply to every city or town . . . .

Mass. Gen. Laws ch. 40A, § 3. Groups of individuals recovering from drug and alcohol abuse may be considered "disabled" for purposes of Section 3. *Brockton Fire Dep't v. St. Mary Broad St., LLC*, 181 F. Supp. 3d 155, 157 (D. Mass. 2016) (collecting cases).

Plaintiff contends that Section 3 requires that unrelated disabled individuals must be treated the same under applicable housing laws as families and groups of similar size. Specifically, it contends that defendants discriminated against disabled persons in violation of Section 3 by requiring it to obtain a special permit, or otherwise failing to exempt it from the

special-permit requirement for group residences.

Defendants acknowledge that recovering alcoholics and drug addicts hosted by a sober home qualify as "disabled persons" under the Zoning Act. They contend, however, that the special-permit requirement for group residences is not discriminatory because it applies generally to groups of five or more individuals, not just the disabled, and therefore does not single out or discriminate against disabled persons. Because a group of four disabled individuals seeking to live together would not have to apply for a special permit, they contend that the permit requirement cannot be "the facially disparate imposition of [a zoning ordinance] on a group residence sheltering disabled individuals" prohibited by Section 3. *See Brockton Fire Dep't*, 181 F. Supp. 3d at 157. The proper recourse for plaintiff, they contend, was to apply for a special permit from the ZBA, which it undisputedly failed to do.

As an initial matter, it seems clear that the Fall River group-residence ordinance violates Section 3 of the Zoning Act. The ordinance treats families (and religious organizations) with five or more persons differently from group residences for the disabled, which the statute does not permit.[7] It follows that the City could not require Mannai to obtain a special permit, and that doing so would constitute "discrimination" within the meaning of the Zoning Act. Accordingly, to the extent that the City's motion for summary judgment is premised on the validity of the ordinance, it will be denied.

Defendants further contend that plaintiff's failure to apply for a permit constitutes a failure to exhaust administrative remedies, as required by the Zoning Act. Section 8 of the Zoning Act provides:

_____

[7] Obviously, the creation of a group home for 22 heroin addicts presents a variety of issues that the purchase of a home by a family with three children does not. *See, e.g.*, *Brockton Fire Dept.*, 181 F.3d at 157 (discussing need for fire sprinklers in group home). Nonetheless, the Court must accept the statute as enacted, without regard to whether it represents sound public policy.

15

> An appeal to the permit granting authority as the zoning ordinance or by-law may provide, may be taken by any person aggrieved by reason of his inability to obtain a permit or enforcement action from any administrative officer under the provisions of this chapter, . . . in violation of any provision of this chapter or any ordinance or by-law adopted thereunder.

Mass. Gen. Laws ch. 40A, § 8; *see also id.* §§ 7, 13, 14, 17. "The statutorily required submission of zoning disputes to local authority is so central to the architecture of [Chapter 40A] that [Massachusetts courts] have required the exhaustion of administrative remedies as a prerequisite to judicial review. . . . Within the zoning context, therefore, principles of exhaustion require that a person aggrieved by the action of a local zoning administrator (the building inspector in most municipalities) must first attempt to redress the grievance through the local board of appeals before seeking judicial review." *Quincy v. Planning Bd. of Tewksbury*, 39 Mass. App. Ct. 17, 20 (1995) (citations omitted).

Exhaustion requirements play an important role in the administration of justice. Not every case needs to proceed immediately to federal (or state) court; administrative processes may serve many valuable functions, including resolving disputes quickly, economically, and at a localized level. Disputes may be resolved, narrowed, or even mooted if those processes are employed.[8]

Exhaustion requirements may, however, be waived on the basis of futility. "The requirement that administrative remedies be exhausted is a general rule that can be waived if, in

---

[8] Nor does the importance of the right at issue trump the exhaustion requirement. For example, claims of discrimination on the basis of race, religion, or gender must normally be filed with the Massachusetts Commission Against Discrimination or the Equal Employment Opportunity Commission. *See Rodriguez v. United States*, 852 F.3d 67, 78 (1st Cir. 2017) (citing *Fantini v. Salem State College*, 557 F.3d 22, 26 (1st Cir. 2009)); *Windross v. Village Automotive Group, Inc.*, 71 Mass. App. Ct. 861, 863-64 (2008). Similarly, claims of constitutional violations brought by prisoners must go through the prison grievance procedure before suit may be filed. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516 (2002). In short, an exhaustion requirement is not a pointless formality, but often an important part of the legal framework for resolving disputes.

the court's discretion, 'the administrative remedies would be inadequate, or resort to them futile.'" *Ward v. Rand*, 2017 WL 2951639, at *26 (Mass. Land Ct. July 10, 2017) (quoting *Ciszewski v. Industrial Acc. Bd.*, 367 Mass. 135, 141 (1975)). Here, plaintiff contends that the City's failure to respond to its various letter, e-mail, telephone, and in-person inquiries about the project, along with Biszko's alleged statement that the project was "never going to happen," is sufficient evidence to establish futility. It is open to question whether a mere lack of responsiveness over the course of several weeks rises to the level of stonewalling required to make a finding of futility. And the alleged one-off comment from Biszko, the City's building inspector/commissioner, may not suffice to prove futility; he did not sit on the ZBA, or otherwise have final authority to deny building permits or exempt applicants from building requirements.

In any event, plaintiff's failure to apply for a special permit can be excused—not on the ground of futility, but because it was not required to obtain one. But plaintiff's failure to apply for a building permit, or seek any other approvals for the project, may fall in a different category. Again, plaintiff never sought any kind of formal approval; essentially, it sent a letter to the City and, after the City failed to respond in a timely manner, filed this complaint.

It seems highly doubtful that plaintiff could simply commence construction without any form of permit or approval by the City, and it is unclear whether any exhaustion requirement should apply in that context. For example, even if the City had no power to deny approval as a zoning matter, it might nonetheless be empowered to impose "reasonable terms and conditions on the proposed use" that might have alleviated some of its concerns. *See Prudential Ins. Co. v. Board of Appeals of Westwood*, 23 Mass. App. Ct. 278, 281-82 (1986).

The Court cannot resolve that issue on the current record, and accordingly cannot find as a matter of law that plaintiff is entitled to prevail on Count 1. For those reasons, as to Count 1,

both motions for summary judgment will be denied.

### C.      Claims under the Fair Housing Act (Count 2) and Americans with Disabilities Act (Count 3)

The Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, was amended in 1988 to prohibit discrimination in housing against persons with handicaps.  *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 530 (5th Cir. 1996).[9]  The statute provides:

> [I]t shall be unlawful . . . . [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person; or a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that person.

42 U.S.C. § 3604(f)(2).  The FHA also prohibits discrimination in the form of "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped] person[s] equal opportunity to use and enjoy a dwelling."  *Id.* § 3604(f)(3)(B).  Individuals recovering from drug and alcohol addiction who seek to live together may be considered persons with handicaps (or disabled persons) under the FHA.  *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 729 (1995); *PSI, LLC v. Nautilus Ins. Co.*, 2014 WL 7409578, at *6 (D. Mass. Dec. 30, 2014) (citing 24 C.F.R. § 100.201(a)(2)).

The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, similarly prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public

---

[9] Plaintiff frames Count 2, in various pleadings, as a claim under *both* the federal fair housing statute and the Massachusetts state analogue, as *only* a federal claim, and as *only* a state claim.  Because the bulk of the parties' analyses of Count 2, with the exception of their discussions of state exhaustion requirements, are devoted to the provisions of and case law interpreting the (federal) FHA, the Court will also analyze the claim through the federal statute.

accommodation." 42 U.S.C. § 12182(a). Prohibited discrimination under the ADA includes:

> (i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered; [and]

> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations . . . .

*Id.* § 12182(b)(2)(A)(i), (b)(2)(A)(ii). Individuals recovering from drug and alcohol addiction who seek to live together may also be considered disabled under the ADA. *PSI*, 2014 WL 7409578, at *8 (citing *Jones v. City of Boston*, 752 F.3d 38, 58 (1st Cir. 2014)).

Because of the similarities between the two statutes, discrimination claims under the FHA and the ADA are typically considered in tandem, and the Court will do so here. *See Astralis Condominium Ass'n v. Secretary, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 66 (1st Cir. 2010); *see also Tsombanidis v. City of W. Haven, Conn.*, 129 F. Supp. 2d 136, 151 (D. Conn. 2001) ("A local government or governmental entity using zoning powers in a discriminatory manner violates the FHA[] and the ADA.").

The FHA "contemplates three types of claims for perceived discrimination: disparate treatment, disparate impact, and failure to make reasonable accommodations." *Astralis Condominium Ass'n* , 620 F.3d at 66 (internal quotation marks omitted). The complaint alleges both disparate treatment and a failure to accommodate. The Court will consider each of these theories in turn.

### 1.    <u>Intentional Discrimination</u>

Disparate treatment under the FHA or ADA is a form of intentional discrimination. "A plaintiff can show discriminatory intent by either direct or indirect evidence." *Pina v. Town of Plympton*, 529 F. Supp. 2d 151, 155 (D. Mass. 2007) (internal quotation marks omitted). "The critical inquiry is whether a discriminatory purpose was a motivating factor in the decisions or actions of the defendants." *Tsombanidis*, 129 F. Supp. 2d at 151 (internal quotation marks omitted).[10] "[U]nfavorable city zoning decisions, standing alone, do not constitute [] direct (or indirect) evidence of [a] city's discriminatory intent." *Pina*, 529 F. Supp. 2d at 155 (citing *Caron v. City of Pawtucket*, 307 F. Supp. 2d 364, 369 (D.R.I. 2004)). "While procedural abnormalities can provide a basis for finding discriminatory intent, such abnormalities are only relevant within a larger scope." *Macone v. Town of Wakefield*, 277 F.3d 1, 6 (1st Cir. 2002) (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977)).

Courts have found allegedly discriminatory statements made by members of the public at zoning hearings do not constitute indirect evidence of discrimination where they are not attributed to the named defendants—meaning, they are attributed neither to the municipality, nor to an individual zoning board member, building inspector, or zoning officer. *See Pina*, 529 F. Supp. 2d at 153 n.2, 155. Even ambiguous remarks by zoning board members themselves that might "betray[] a [discriminatory] concern" have been found insufficient where they reflect legitimate concerns about property development. *See Macone*, 277 F.3d at 5-7; *see also National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 743-44 (1st Cir. 1995)

---

[10] "Although the proper analytical framework for a claim of intentional discrimination is the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)," courts in this district have, instead, focused on the "motivating factory" inquiry, thereby "assum[ing] that [a] plaintiff[ has] met [his] *prima facie* burden and that defendants have articulated a legitimate, non-discriminatory reason for their actions." *See Tsombanidis*, 129 F. Supp. 2d at 151 n.21.

("[S]tatements from various selectmen and town meeting members that are, to appellant's way of thinking, code words demonstrating 'institutional racism'" . . . are at worst ambiguous. Standing alone, they are insufficient to raise an inference of racial animus . . . on the part of the legislative body . . . . While ambiguous remarks may, under some circumstances, help to illuminate the summary judgment record, such remarks rarely will suffice to conceive an issue of material fact when none otherwise exists.").

Here, plaintiff contends that the disability of the future sober home residents "was a motivating factor in the action taken to prevent this housing project from moving forward." (Pl. Mem. at 9). As proof of discriminatory treatment, it points to evidence that Biszko, knowing the nature of the proposal, told plaintiff that the City already had problems with other sober homes, and that the project was "never going to happen."

That evidence, without more, is not enough to grant summary judgment for plaintiff on the subject of discriminatory intent. While of course Biszko's comment could plausibly "betray[] a [discriminatory] concern," construed in the light most favorable to the non-moving party, it could also reflect legitimate concerns. *See Macone*, 277 F.3d at 5-7. The fact that plaintiff was not allowed to proceed as a matter of right, as it demanded, is not enough to require a finding of intentional discrimination as a matter of law. *See PSI*, 2014 WL 7409578, at *4 (not discriminatory for defendant insurance company to charge plaintiff, insured operator of sober homes, a different liability premium based on number of unrelated occupants because the same premium would apply not only to sober homes, but also to other kinds of group residences occupied by multiple unrelated tenants). And while the Fall River ordinance constitutes "discrimination" within the meaning of the Zoning Act, and is certainly evidence of discriminatory intent, it does not require summary judgment for plaintiff on its claims of

intentional discrimination under the FHA and ADA, without proof of discriminatory intent.

For those reasons, summary judgment will not be granted to plaintiff on its claim of intentional discrimination under the FHA and ADA.

While the evidence as to discriminatory intent is insufficient to warrant summary judgment in plaintiff's favor, that same evidence likewise does not warrant summary judgment for defendants. Put simply, plaintiff's primary evidence of discriminatory intent, which is Biszko's statement, is too ambiguous to warrant judgment as a matter of law in either direction. Accordingly, defendants' motion for summary judgment will also be denied.

### 2.  Failure to Accommodate

In order to state a claim for failure to accommodate a person with disabilities under the FHA, a plaintiff must show that he is disabled under the statute, that the defendant knew or reasonably should have known of his disability, "that he requested a particular accommodation that is both reasonable and necessary to allow him an equal opportunity to use and enjoy the housing in question . . . [, and] that the [defendant] refused to make the requested accommodation." *Astralis*, 620 F.3d at 67.

Here, the parties do not dispute that sober-home residents may be considered "disabled" within the meaning of the FHA (and ADA), and that defendants knew of plaintiff's intention to house such individuals at the property. Rather, what is at issue is whether there was a denial of a reasonable request for accommodation.

"Typically, a request for reasonable accommodation concerns the removal of a physical barrier or an alteration of policies to allow equal participation in a program." *PSI*, 2014 WL 7409578, at *6 (citing 24 C.F.R. § 100.204(b); *Astralis*, 620 F.3d at 68 (affirming finding of failure to reasonably accommodate when a condominium association refused to grant disabled

22

residents special parking privileges)). "Though more attenuated requests may be appropriate under the statute, they must nevertheless be 'necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas.'" *Id.* (quoting 24 C.F.R. § 100.204(a)). Requests for accommodation are unreasonable if the plaintiff has not shown a link between the need asserted and greater access to housing for disabled individuals. *See id.* at *7.

Plaintiff contends here that defendants' failure to respond formally to its request for permission to develop the property, along with Biszko's comment that the project was "never going to happen," amount to a failure to provide a reasonable accommodation.

It is unclear what "accommodation" plaintiff was seeking. While it is true that plaintiff was not required to obtain a special permit, its request to proceed as a matter of right is not a request for an "accommodation." Plaintiff never requested something out of the ordinary, such as a waiver of otherwise-applicable code requirements. In short, it never requested an "accommodation," as opposed simply to stating that it had the right to proceed without a special permit.

Under the circumstances, the Court cannot find that defendants denied a request for reasonable accommodation within the meaning of the law. Accordingly, defendants' motion for summary judgment will be granted as to plaintiff's failure to accommodate claim.

### D. Qualified Immunity

Defendants contend that Biszko is entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). *Harlow* provides that "[g]overnment officials," such as Biszko, who are "performing discretionary functions," are "generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." 457 U.S. at 818.

In response, plaintiff appears to contend that Biszko's conduct violated its "clearly established" rights under the FHA, citing to *Safe Haven Sober Houses, LLC v. Good*, 82 Mass. App. Ct. 1112, at *3 (2012). There, the court observed that "by 2007, it was clearly established that recovering addicts were members of a legally protected class of handicapped individuals and that intentional discrimination against group housing for handicapped individuals violated the FHA[]."

In light of *Safe Haven*, the right in question was clearly established at the relevant time, such that a "reasonable person would have known" that intentionally discriminating against group housing for the disabled violates plaintiff's rights. Biszko is therefore not entitled to qualified immunity. Whether Biszko's conduct actually violated those rights is, however, a question for another day. Accordingly, defendants' motion for summary judgment on the basis of qualified immunity will be denied.

### E. <u>Damages</u>

Plaintiff seeks injunctive relieve and various types of damages, including lost profits. Defendants contend that plaintiff's request for damages is speculative and therefore that its damages claim should fail as a matter of law.

Defendants have provided no authority in support of their position. In any event, plaintiff has provided sufficient evidence of damages to survive defendants' challenge. While plaintiff is required to prove its lost profits to a reasonable degree of certainty, it has provided a detailed analysis of its anticipated lost profits. (*See* Burke Aff. ¶¶ 9-10; Ex. D). In addition, plaintiff has also provided evidence of other damages, including the $500 incorporation fee. (*Id.*). As plaintiff also notes, it is free to seek damages for "frustration of purpose" under the FHA. *See*

*Saunders v. General Services Corp.*, 659 F. Supp. 1042, 1060-61 (E.D. Va. 1987). Accordingly, defendants are not entitled to summary judgment on the issue of damages.

IV.     **Conclusion**

For the foregoing reasons,

1.      Plaintiff's motion to strike the affidavit of Glenn Hathaway is DENIED.

2.      Plaintiff's motion summary judgment is DENIED.

3.      Defendants' motion for summary judgment is GRANTED as to the claim for failure to provide reasonable accommodation in Counts 2 and 3, and otherwise DENIED.

**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  February 5, 2019